THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
NO. 3:17-cv-95

ELLA MATTHEWS AND RUSSELL NOLL,    )
                                    )
                Plaintiffs,         )
                                    )
        v.                          )
                                    )
TCL COMMUNICATION, INC., TCT        )
MOBILE (US) INC., TCT MOBILE, INC., )
AND TCT MOBILE (US) HOLDINGS INC.,  )
                                    )
                Defendants.         )


**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL
OF SETTLEMENT, CERTIFICATION OF THE SETTLMENT CLASS,
AND APPROVAL OF THE NAMED PLAINTIFFS' INCENTIVE AWARDS
AND ATTORNEYS' FEES, COSTS AND EXPENSES**

Plaintiffs Ella Matthews and Russell Noll, individually and on behalf of all other

similarly situated Alcatel OneTouch Idol 3 4.7 inch or 5.5 inch smartphone purchasers in North

Carolina and Kentucky, hereby move for: (1) certification of a class in connection with the

proposed settlement (the "Settlement") of this action (the "Action"); (2) approval of the

Settlement, pursuant to Plaintiffs' Unopposed Motion for Preliminary Approval of the

Settlement, dated and filed with the Court on February 21, 2018; (3) approval of an award of

attorneys' fees, costs and expenses in the aggregate of $120,000 for the services Class Counsel

rendered in the successful prosecution and settlement of the Action; (4) approval of the payment

of up to $34,966.50 for the Claims Administrator as set forth in the Settlement Agreement, and;

(5) approval of the service payments of $2,500 to Named Plaintiffs. Support for this Motion is

included in the attached Brief.

Dated: July 20, 2018                                Respectfully submitted,

                                                    */s/ Nicholas A. Migliaccio*
                                                    Nicholas A. Migliaccio, Esq. (*pro hac vice*)
                                                    Jason S. Rathod, Esq. (*pro hac vice*)
                                                    Migliaccio & Rathod LLP
                                                    412 H Street N.E., Suite 302
                                                    Washington, D.C. 20002
                                                    Office: (202) 470-3520
                                                    Fax: (202) 800-2730

                                                    Gary E. Mason, Esq.*
                                                    Jennifer S. Goldstein, Esq.*
                                                    5101 Wisconsin Ave. NW
                                                    Ste. 305
                                                    Washington, D.C. 20016
                                                    Office: (202) 640-1160
                                                    Fax: (202) 429-2294

                                                    Scott C. Harris
                                                    Whitfield Bryson & Mason LLP
                                                    900 W. Morgan Street
                                                    Raleigh, North Carolina 27603
                                                    Telephone: (919) 600-500
                                                    Facsimile: (919) 600-5035

                                                    * *pro hac vice* to be filed

                                                    **Attorneys for Plaintiffs and the Class**

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of July 2018, a true and complete copy of the

foregoing Motion was served via electronic mail to the following:

Jon Berkelhammer, Esq.
jon.berkelhammer@elliswinters.com
Brian W. Shaffer, Esq.
Brian.shaffer@morganlewis.com
Thomas J. Sullivan, Esq.
Thomas.sullivan@morganlewis.com

**Attorneys for Defendants**

                                                    */s/ Nicholas A. Migliaccio*
                                                    Nicholas A. Migliaccio

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:17-cv-00095-FDW-DCK

| | |
|---|---|
| ELLA MATTHEWS and RUSSELL KNOLL, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TCL COMMUNICATION, INC., TCT MOBILE (US) INC., TCT MOBILE, INC. AND TCT MOBILE (US) HOLDINGS INC.,<br><br>Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT, CERTIFICATION OF THE SETTLMENT CLASS, AND APPROVAL OF THE NAMED PLAINTIFFS' <u>INCENTIVE AWARDS AND ATTORNEYS' FEES, COSTS AND EXPENSES</u>**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT…………………………………………………………..1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY………………………...1

    A.  The Nature of the Lawsuit and Relevant Procedural History………………………1

    B.  The Settlement Agreement……………………………………………………4

        1.  The Settlement Class Definition………………………………………...4

        2.  The Settlement Terms…………………………………………………..4

        3.  Release of Claims……………………………………………………….5

    C.  The Notice Process and Class Members' Reaction to the Settlement………………5

ARGUMENT…………………………………………………………………………...7

    I.      THE CONDITIONALLY CERTIFIED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES……………………………………………………7

    II.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND MERITS THIS COURT's APPROVAL……………………………………...8

        A.  Fairness Determination……………………………………………………8

            1.  The Posture of the Case and the Extent of Discovery………………………8

            2.  The Circumstances Surrounding the Negotiations………..………………9

            3.  Class Counsel Have Extensive Experience in the Area of Consumer Class Action Litigation………………………………………………………..10

    III.    PLAINTIFFS' SERVICE AWARDS ARE REASONABLE AND SHOULD BE GRANTED………………………………………………………………..11

    IV.    PLAINTIFFS' COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED ...……………………………………………...12

        A.  The Requested Fee is Reasonable Under the Lodestar Analysis……………...12

            1.  The Time and Labor Expended and Customary Fee for Similar Work……...13

            2.  The Novelty and Difficulty of Questions Raised By the Litigation…………14

3.  The Skill Required to Perform the Legal Services…………………..…14

4.  The Preclusion of Other Employment by Class Counsel Due to Acceptance of the Case……………………………………………………………………15

5.  The Attorneys' Expectation at the Out-Set of the Litigation and the "Undesirability" of the Action………………………………………….....16

6.  Whether the Fee is Fixed or Contingent…………………………….…16

7.  The Results Obtained……………………………………………………...16

8.  The Experience, Reputation and Ability of the Attorneys…………………...17

B.  Class Counsel's Rates Are Reasonable  …………………………………18

V.  CONCLUSION……………………………………………………………20

iii

## PRELIMINARY STATEMENT

Plaintiffs Ella Matthews and Russel Knoll ("Plaintiffs"), represented by Migliaccio & Rathod LLP and Whitfield Bryson & Mason LLP and ("Class Counsel"), on behalf of themselves and the other members of the proposed Settlement Class (defined below), respectfully submit this memorandum of law in support of their application for: (1) certification of a class in connection with the proposed settlement (the "Settlement") of this action (the "Action"); (2) approval of the Settlement, pursuant to Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, dated and filed with the Court on February 21, 2018; (3) approval of an award of attorneys' fees, costs and expenses in the aggregate of $120,000 for the services Class Counsel rendered in the successful prosecution and settlement of the Action ("Fee and Expense Award"); (4) approval of the payment of up to $34,966.50 for the Claims Administrator as set forth in the Settlement Agreement, and; (5) approval of the service payments of $2,500 to Named Plaintiffs. Each of the required elements for class certification for settlement purposes exists, the Settlement meets the criteria for final approval, the requested Fee and Expense Award is reasonable and appropriate under the circumstances, and this Court has preliminarily approved the Settlement. Thus, the Court should grant Plaintiff's Unopposed Motion for Final Approval of the Settlement.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A. The Nature of the Lawsuit and Relevant Procedural History

The facts of this case and procedural history were described in detail in Plaintiffs' Amended Class Action Complaint ("Am. Compl."). *See* (Doc. No. 22). To summarize here, the claims pertain to Defendants' conduct in marketing, warranting, and selling Alcatel OneTouch Idol 3 4.7 inch and 5.5 inch smartphones sold and distributed by the Defendants from January 1,

1

2015 to the present. *See* Am. Compl. at ¶ 1. Plaintiffs contended that Defendants warranted and represented that Idol 3 Smartphones possessed compatibility with LTE Band 12, a frequency on which mobile phones operate for high speed communication. Plaintiffs further contended that Defendants surreptitiously removed LTE Band 12 compatibility from all Idol 3 Smartphones in a software update, greatly reducing the functionality of the Idol 3 Smartphones. *See* Am. Compl. at ¶¶ 2-3.

On or about December 19, 2016, Class Counsel filed a putative class action in the Commonwealth of Kentucky Pendleton County Circuit Court on behalf of Plaintiff Russell Noll in which he asserted claims against Defendants for alleged violation of the Kentucky Consumer Protection Act, KRS 367.110, et seq., breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment on behalf of all others similarly situated (the "Kentucky Action"). On or about December 28, 2016, Class Counsel filed a Complaint in the State of North Carolina Superior Court on behalf of Ella Matthews in which she asserted claims against Defendants for alleged violation of the North Carolina Consumer Protection Act, N.C. Gen. Stat. § 75-1.1, et seq., breach of contract, breach of implied warranty of merchantability, breach of express warranty, fraudulent and negligent misrepresentation, violation of the Magnuson-Moss Consumer Products Liability Act, unjust enrichment, and declaratory relief on behalf of all others similarly situated (the "North Carolina Action").

Defendants removed the North Carolina Matter to the United States District Court for the Western District of North Carolina on February 27, 2017. (Doc. No 1). The Parties then met and conferred with respect to a discovery plan and scheduling order and submitted a proposed schedule to the Court. The Parties then engaged in written discovery and exchanged factual information underlying the Claims and defenses. The investigation and discovery conducted by

the Parties in this case was comprehensive and time-consuming. Information and documents concerning the claims and defenses were exchanged, reviewed, and processed by each side. Indeed, the Plaintiffs thoroughly investigated the relevant facts and legal issues through every means available. This effort yielded substantial information, including information disclosed by Defendants to Plaintiffs' Counsel regarding the number of potential Class Members, the dates during which the Idol 3 Smartphones were sold, and Defendants' contention that LTE Band 12 compatibility was only removed from Idol 3 Smartphones operating on the T-Mobile Network (including Idol 3 Smartphones using mobile virtual network operators ("MVNOs")) to minimize the risk associated with the inability to make emergency (911) calls under LTE Band 12 in certain T-Mobile markets. All of this allowed the Parties to discuss the scope of the suit and the necessary remedies for problems reported by Plaintiffs and putative class members intelligently and accurately assess and discuss the pros and cons of settlement.

The Parties then jointly moved to stay the proceedings and vacate the deadlines set forth in the Case Management Order to conduct further discovery and negotiations on December 13, 2017. (Doc. No. 11). On or about November 29, 2017, the parties reached an agreement in principle to settle the North Carolina and Kentucky Actions. After that point, the parties exchanged multiple drafts of the settlement agreement and negotiated over various terms via email and telephone conferences. The negotiations included multiple conference calls between the Parties' Counsel and countless e-mails. Several of these communications were contentious at times and different attorneys were required to handle the negotiations from time to time as a result. The Settlement reached by the Parties was the product of arms' length negotiations by counsel with extensive experience in litigating class action claims. Each party was independently

3

represented by counsel throughout this litigation. As such, Counsel for each Party was obligated to and did vigorously represent their Clients' rights

On February 21, 2018, Plaintiffs filed an Amended Complaint to include the Kentucky Action. (Doc. No. 22). Plaintiffs then filed an Unopposed Motion for Preliminary Approval of Class Action Settlement on February 21, 2018. (Doc. No. 23). The Court initially set a fairness hearing for preliminary approval for April 5, 2018 but allowed the Parties to amend the Order on March 21, 2018, which set the final fairness hearing for June 11, 2018. (Doc. No. 24-26). The Court then granted preliminary approval of the Settlement on May 31, 2018 and the Parties agreed to extend the March 21, 2018 fairness hearing and reschedule a final fairness hearing for August 8, 2018. (Doc. No. 28).

### B. The Settlement Agreement

The Settlement Agreement's material terms are summarized below:

#### 1. *The Settlement Class Definition.*

For purposes of settlement only, the parties have agreed to certification of the following class:

> All persons residing in North Carolina and/or Kentucky who purchased Alcatel OneTouch Idol 3 4.7 inch or 5.5 inch smartphones ("Idol 3 Smartphones") during the time period of January 1, 2015 – December 27, 2016.

#### 2. *The Settlement Terms*

Under the terms of the Settlement, for each Settlement Class Member who submits a valid short form Claim Form and Release that includes evidence that the Settlement Class Member's Idol 3 Smartphone used the T-Mobile Network, Defendants agree to either (1) reinstate LTE Band 12 functionality on the particular Settlement Class Member's Idol 3 Smartphone within a reasonable period of time not to exceed 3 months from this Court's final

approval of the settlement; or (2) provide a comparable replacement Alcatel smartphone (i.e., one with a manufacturer's suggested retail price of at least $179.99 and LTE Band 12 compatibility) for each Idol 3 Smartphone originally purchased by a Settlement Class Member.

Plaintiffs seek service awards in the amount of $2,500 to Named Plaintiffs Ella Matthews and Russell Noll, each of whom provided substantial assistance in the prosecution on the instant case. Class Counsel seek an award of attorneys' fees, expenses and costs in the amount of $120,000.

Defendants will receive a release of claims from the date of Final Approval unless a Class Member submits a timely and valid Opt-Out Form. The release will apply to all claims arising from or related to the removal of the LTE Band 12 functionality on the Idol 3 Smartphones, excluding any claims for personal injury that may be related to the removal of LTE Band 12 functionality on the Idol 3 Smartphones

As shown below, the terms of the settlement confer a fair, reasonable, and substantial benefit upon the Members of the Proposed Class.

### 3. *Release of Claims*

Each Class Member who properly submits a timely and valid Claim Form and Release will either have Band 12 reinstated on their phones or receive a replacement phone and release all claims asserted or that could have been asserted in this lawsuit. Potential Claimants who do not submit a timely and valid Claim Form will not receive a payment but will release Defendant from all claims asserted or that could have been asserted in this lawsuit.

### C. The Notice Process and Class Members' Reaction to the Settlement

In the Preliminary Approval Order, the Court appointed RG/2 Claims Administration LLC ("RG/2") to administer the notice and claims administration for the settlement. (Doc. No. 28).

5

RG/2 was retained to, among other tasks, a) arrange for the publication of the Summary Notice; b) create an ad campaign using social media; c) create on online filing portal and host the website; d) prepare print and mail Notices to all potential class members identified by Defendants; e) track the requests for exclusion and objections to the settlement; f) process claims received; g) prepare activity reports for Class Counsel; h) handle inquiries from Class members; i) re-mail notices; j) skip-trace undeliverable addresses; k) calculate and distribute distribution checks to authorized class members and l) conduct such other tasks as the Parties mutually agree or the Court orders RG/2 to perform. *See* Declaration of Tina Chiango ("Chiango Dec.") attached here as Exhibit A, at ¶ 2. The website, www.alcatelband12settlement.com was created by RG/2 Claims and went live on April 3, 2018. The website included the following:

  a. The "Homepage," which contains a brief summary of the Settlement and advises potential Class Members of their rights under the Settlement;

  b. The "Notice/Claim" page, which contains a pdf copy of the Court-Ordered Notice, as well as a link to the Claims online filing portal;

  c. The "Case Documents" page, which contains the Motion for Preliminary Approval, the Preliminary Approval Order and the Settlement Agreement. Additional documents will be added as requested;

  d. The "FAQs" page, which contains the questions and answers that were part of the Notice;

  e. The "Contact" page, which contains the contact information of the Claims Administrator and Class Counsel.

Chiango Dec., ¶ 3.

On April 3, 2018, RG/2 Claims arranged for the publication of the Summary Notice in the following eight (8) publications: *Bowling Green Daily News; Charlotte Observer; Greensboro News & Record; Lexington Herald-Leader; Louisville Courier Journal; Owensboro Messenger-Inquirer; Raleigh News & Observer; and Winston-Salem Journal.* Chiango Dec. ¶ 4. In addition, RG/2 arranged for an internet campaign using Facebook ads to locate class members in Kentucky and North Carolina. Users could click on the Facebook Ad and be linked directly to the case website. Chiango Dec., ¶ 5.

On May 22, 2018, RG/2 received a file from Defendant's Counsel with the names and addresses of potential Class Members living in North Carolina and Kentucky. RG/2 amended the Notice to extend the deadline to exclude or object to June 29, 2018 and mailed an updated Notice to the 91 potential Class Members on June 1, 2018. Chiango Dec., ¶ 6.

As referenced above, the Notice advised Class Members of their right to exclude themselves from settlement or to object to the settlement. To date, RG/2 has not received any requests for exclusion nor any objections to the settlement. Chiango Dec., ¶ 7.

The deadline to file a Claim Form and Release is April 19, 2019. To date, RG/2 has received numerous Claim Forms and is currently evaluating claims filed and corresponding with Claimants regarding any needed documentation to validate their claims. Chiango Dec., ¶ 8.

## ARGUMENT

I. **THE CONDITIONALLY CERTIFIED CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES**

Plaintiffs requested in their proposed Settlement that the Court preliminarily certify the Class so that Notice of the proposed Settlement could be issued to Defendant. In the March 14, 2018 Preliminary Approval Order, this Court set forth all the elements necessary under Fed. R. Civ. P. 23 to conditionally certify the Settlement Class. Preliminary Approval Order ¶¶ 1-2. The

7

Class continues to meet the requirements set forth by Fed. R. Civ. P. 23 and, for all of the reasons set forth in Plaintiffs' Motion for Preliminary Approval as held in the Preliminary Approval Order, incorporated herein by reference, Plaintiff now requests that the Court grant final certification of the Settlement Class.

## II.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE, AND MERITS THIS COURT'S APPROVAL

Typically, a court will approve a proposed class action settlement so long as the terms of the settlement are fair and adequate under Fed. R. Civ. P. 23(e). *See e.g. In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991); *see also Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1:08cv1310 (AJT/JFA), 2009 U.S. Dist. LEXIS 89136, at *27 (E.D. Va. June 23, 2009) ("There is a 'strong presumption in favor of finding a settlement fair' that must be kept in mind in considering the various factors to be reviewed in making the determination of whether a settlement is fair, adequate and reasonable.").

### A.  Fairness Determination

In this District, the court must consider the following factors when assessing the fairness of a proposed settlement: (1) the posture of the case at the time the settlement was proposed; (2) the extent of discovery conducted; (3) the circumstances surrounding the negotiations; (4) the experience of counsel in the area of class action litigation. *See Seaman v. Duke Univ.*, No. 1:15-CV-462, 2018 U.S. Dist. LEXIS 13400, at *4 (M.D.N.C. Jan. 4, 2018) (citing *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991)). Based upon the following analysis of the factors, Plaintiffs' Counsel respectfully submits that the Settlement is fair.

#### 1.  The Posture of the Case and the Extent of Discovery

The first factor directs the Court to evaluate the progression of the case and to ensure that the Plaintiffs, "had access to sufficient information to adequately evaluate the merits of the case

8

and weigh the benefits of settlement against further litigation." *West v. Cont'l Auto., Inc.*, No. 3:16-cv-00502-FDW-DSC, 2018 U.S. Dist. LEXIS 26404, at *10 (W.D.N.C. Feb. 5, 2018). This factor assists the court in evaluating whether the plaintiff and his/her counsel have sufficiently developed the case such that they can appreciate the merits of the claims. *See, Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534, at *8 (S.D.W.V. Dec. 19, 2008).

With regards to the second factor, there is, "no minimum or definitive amount of discovery that must be undertaken." *Id.* at *8-9 (citing *Jiffy Lube*, 927 F.2d at 159); *see also Beasley v. Custom Communs., Inc.*, No. 5:15-CV-00583-FL, 2017 U.S. Dist. LEXIS 219975, at *6 (E.D.N.C. Oct. 24, 2017) (approving settlement after parties had engaged in informal discovery and had participated in one full day of mediation). This factor also enables the Court to ensure that the case is well-developed such that class counsel and plaintiffs can understand and appreciate the full extent of the case when entering into a settlement. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009). Here, as detailed above, the formal and informal discovery that the parties conducted was comprehensive and supported the parties' mutual resolution and release of claims.

### 2. The Circumstances Surrounding the Negotiations

The third "fairness" factor requires the Court to evaluate the conditions and circumstances surrounding the settlement negotiations between Class Counsel and Defendants. The objective of this factor is to ensure that any settlement that is reached between the parties is the result of arms-length negotiations and "lengthy discussions and considerable dialogue between the Parties." *Cont'l Auto., Inc*., 2018 U.S. Dist. LEXIS 26404 at *12. In fact, "[a]bsent evidence to the contrary, the court may presume that settlement negotiations were conducted in

9

good faith and that the resulting agreement was reached without collusion." *Muhammad v. Nat'l City Mortg., Inc.*, No. 2:07-0423, 2008 U.S. Dist. LEXIS 103534 at *9-10 (S.D. W. Va. Dec. 19, 2008) (citing Newberg on Class Actions § 11.28 at 1159 (3d ed.1992)).

Here, as detailed above, the Settlement was the product of vigorous, adversarial and arm's length negotiations between Class Counsel and Defendants' Counsel. *See supra* at p. 3. Thus, the proposed settlement is the product of two fully informed sides negotiating intensely at arm's length. *Id.* See also *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR(3), 2010 U.S. Dist. LEXIS 68619, at *6-7 (E.D.N.C. June 11, 2010) ("There is no evidence to the contrary, and the docket supports a finding of arms-length negotiations as there have been numerous filings on contested matters. Therefore, the Court is satisfied that the negotiations were conducted such that each side actively advocated its own position.").

### 3. Class Counsel Have Extensive Experience in the Area of Consumer Class Action Litigation

The final factor looks to the experience of counsel in this particular field of law. *See In re Hatteras Fin., Inc. S'holder Litig.*, 286 F. Supp. 3d 727, 737 (M.D.N.C. 2017). Class Counsel, Migliaccio & Rathod LLP and Whitfield Bryson & Mason LLP, have litigated extensively in the area of consumer class actions and are well-reputed for pursuing their cases to a successful resolution through trial or settlement. Class Counsel's qualifications are set forth in their Firm Resumes, attached hereto as Exhibits B and C. Class Counsel have arrived at a well-considered judgment based on their knowledge of the facts of this case and their extensive litigation experience in the same and related areas that the Settlement is in the best interests Plaintiffs and the Class and is an excellent achievement and appropriate under all the circumstances. Accordingly, the Settlement should receive this Court's final approval.

10

### III. PLAINTIFFS' SERVICE AWARDS ARE REASONABLE AND SHOULD BE GRANTED

"Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive or service awards reward representative plaintiffs' work in support of the class, as well as their promotion of the public interest" and "[c]ourts around the country have allowed such awards to named plaintiffs or class representatives." *Deem v. Ames True Temper, Inc*., 2013 U.S. Dist. LEXIS 72981, 2013 WL 2285972, at *6 (S.D. W. Va. May 23, 2013); *see also Savani v. URS Prof'l Solutions LLC*, No. 1:06-cv-02805, 2014 U.S. Dist. LEXIS 5092, 2014 WL 172503, at *10 (D.S.C. Jan. 15, 2014) (citation omitted).

The Settlement contemplates service awards of $2,500 per Named Plaintiff. "To determine whether an incentive payment is warranted, the court should consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." *Kirven v. Cent. States Health & Life Co. of Omaha*, No. 3:11-cv-2149, 2015 U.S. Dist. LEXIS 36393, 2015 WL 1314086, at *13 (D.S.C. Mar. 23, 2015) (citation omitted). Here, the Named Plaintiffs stepped forward to place their names on the complaint. The Named Plaintiffs were directly and regularly involved in this litigation and accepted both financial and reputational risks by commencing and supporting it. In particular, the Named Plaintiffs produced documents to describe and confirm their claims, assisted with the review of case documents to inform litigation strategy, assisted in preparations for settlement negotiations, and reviewed the fairness of Defendant's settlement proposals. These services will benefit all Class members

11

through the proposed settlement. The modest awards to the Named Plaintiffs are reasonable and should be approved. *See In re MI Windows & Doors Prods. Liab. Litig.,* No. MDL No. 2333, 2015 U.S. Dist. LEXIS 95889, at *17 (D.S.C. July 23, 2015) (finding $5,000 service awards to named plaintiffs to be "modest" and "well within the range of service awards approved by other courts.").

## IV. PLAINTIFFS' COUNSEL'S REQUEST FOR THE FEE AND EXPENSE AWARD SHOULD BE GRANTED

For prosecuting this Action on a fully contingent basis and obtaining substantial benefits for the Class, Plaintiffs' Counsel seeks an award of attorneys' fees and expenses in the amount of $120,000. Defendants do not oppose this request. As discussed below, the Fee and Expense Award is fair and reasonable in light of the very substantial benefits Plaintiffs' Counsel achieved for Plaintiffs and the Class through the Settlement.

### A. The Requested Fee is Reasonable Under the Lodestar Analysis

Because there is no "common fund" in this case from which attorneys' fees can be awarded, this Court should find that the lodestar method is the appropriate means for calculating fees. *See e.g. Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243-44 (4th Cir. 2009) ("In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate."); *see also Rucker v. McNair*, No.5:95-CV-1054-BO(2), 1997 U.S. Dist. LEXIS 22036, at *9-10 (E.D.N.C. Dec. 7, 1997) (applying the lodestar method of calculation in a "common benefit" case). A court must look to several factors to be considered when determining the reasonableness of attorneys' fees:

> (1) time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the out-set of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in

12

controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

See *Stortz v. Cherokee Ins. Co.*, No. 5:16-cv-200-GCM, 2018 U.S. Dist. LEXIS 62949, at *5 (W.D.N.C. Apr. 12, 2018) (citing *Robinson*, 560 F.3d at 243 and *Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir. 1978)). Application of these factors confirms the reasonableness of the requested Fee and Expense Award.

### 1. The Time and Labor Expended, and Customary Fee for Similar Work

Plaintiffs' Counsel have expended substantial time and resources to diligently prosecute this Action. In this case, Class Counsel have expended 416.15 hours on this case, for a total lodestar of $ 203,951.34. *See* Declaration of Nicholas A. Migliaccio ("Migliaccio Dec."), attached hereto as Exhibit D, at ¶ 13. This represents a negative multiplier of approximately .58. A *negative* multiplier further underscores the reasonableness of the fee because courts have held that *positive* multipliers are reasonable and may be readily awarded. *See Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 470 (S.D. W. Va. 2010) (noting that "[c]ourts have generally held that lodestar multipliers falling between 2 and 4.5 demonstrate a reasonable attorneys' fee" and collecting cases in the Fourth Circuit with lodestar multipliers in this range); *Coventry Health Care, Inc.*, 299 F.R.D. 451, 467 (D. Md. 2014) (same). Indeed, the attorneys' fees, costs and expenses sought by Class Counsel are comparable to, or below, those awarded in other consumer class action cases, and are reasonable, especially given the substantial and multiple benefits provided to the Class. *See, e.g., Dickerson v. York Int'l Corp.*, No. 1:15-CV-1105, 2017 U.S. Dist. LEXIS 133587, at *31 (M.D. Pa. Aug. 22, 2017) (awarding attorneys' fees using lodestar method with a 0.865 multiplier in defective product class action for residential and commercial air-conditioning systems); *Roeser v. Best Buy Co.*, No. 13-cv-1968 (JRT/HB), 2015

U.S. Dist. LEXIS 88471, at \*30 (D. Minn. June 17, 2015) (granting plaintiff's motion for final approval of settlement and attorneys' fees of $358,182 using lodestar method in consumer fraud and deceptive trade practices class action lawsuit against Best Buy for its faulty Home Networking software); *Roberts v. Electrolux Home Prods.*, No. SACV12-1644-CAS(VBKx), 2014 U.S. Dist. LEXIS 130163, at \*24 (C.D. Cal. Sep. 11, 2014) (finding plaintiffs' attorneys' fees appropriate where a 1.23 multiplier was used in defective product consumer class action); *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12-cv-97, 2018 U.S. Dist. LEXIS 58685, at \*13 (E.D. Va. Mar. 22, 2018) (multiple of 1.31 was reasonable in a Fair Credit Reporting Act settlement).

### 2. The Novelty and Difficulty of Questions Raised By the Litigation

This Action involves complex factual and legal issues. As stated above, well before the Parties came to agree on the Settlement, Plaintiffs' Counsel conducted an extensive factual investigation. The negotiations included multiple conference calls between the Parties' Counsel and countless e-mails. Several of these communications were contentious at times and different attorneys were required to handle the negotiations from time to time as a result.

In addition to the factual record researched, reviewed and analyzed by Plaintiffs' Counsel, counsel also researched, reviewed and analyzed the legal issues presented by Plaintiffs' claims and Defendants' potential defenses. All of this review was necessary to assess the scope for continuing litigation

### 3. The Skill Required to Perform the Legal Services

It took considerable skill to achieve the Settlement and Plaintiffs' Counsel has extensive experience in the areas of unfair and deceptive trade practices and defective product class actions. *See* Migliaccio Dec., ¶ 10. To successfully pursue the Action, Class Counsel needed to

14

marshal their expertise in North Carolina and Kentucky state law governing consumer protection, as well as the knowledge to distill and analyze facts giving rise to Plaintiffs' claims. Plaintiffs' Counsel assembled a team that possessed the necessary expertise. These combined talents allowed counsel to plead claims and theories of liability to pursue the Action, obtain the information they needed to analyze the strength and weaknesses of these claims and bring Defendants to the negotiating table, all to the benefit of Plaintiffs and the Proposed Class.

### 4. The Preclusion of Other Employment by Class Counsel Due to Acceptance of the Case.

"It is obvious that if the attorneys were working on one case they could not be working on another." *In re Wayne Farms LLC FLSA Litig.*, 2009 U.S. Dist. LEXIS 123871, *10 (S.D. Miss. Dec. 23, 2009). Such is the case here. As indicated by the accompanying declarations, Class counsel have busy law practices, and, as such, the substantial time dedicated to the instant lawsuit precluded them from working on other matters. Furthermore, the size of the counsel's practice and the time demands of the litigation are relevant. *See Vincent v. Lucent Techs., Inc.*, 2011 U.S. Dist. LEXIS 123780, *13 (W.D.N.C. Oct. 25, 2011) (finding that the "small size of the [ten-person] firm," as well as its finite resources, made the firm unable to accept other paying work in order to pursue the litigation). The majority of this litigation was handled by Migliaccio & Rathod LLP, which has two full-time attorneys and one of counsel.

While the firms have the resources to dedicate to this and other litigation, their resources are finite and a commitment of over two and a half years to shoulder the costs of complex litigation presented a burden. Likewise, this litigation required the firms to dedicate substantial attorney and staff resources over the years without any compensation. Thus, this factor favors the requested fee award.

15

5. **The Attorneys' Expectation at the Out-Set of the Litigation and the "Undesirability" of the Action**

Class Counsel would never describe a case they chose to prosecute on a contingency basis as "undesirable." Indeed, from this case's beginning, Plaintiffs believed their claims were supported by both fact and law. Nevertheless, Plaintiffs' Counsel accepted this case on a contingency basis, meaning there was substantial risk that Plaintiffs would not prevail, and that Plaintiffs' Counsel would therefore not recover their expenses or be paid for the hours of diligent work they performed. Courts recognize that where, as here, counsel's compensation is contingent on recovery, a premium over counsel's hourly rate may be appropriate. *See, e.g. KBC Asset Mgmt. NV v. 3D Sys. Corp.*, Civil Action No. 0:15-cv-02393-MGL, 2018 U.S. Dist. LEXIS 109051, at *5 (D.S.C. June 25, 2018) (awarding attorneys' fees using the lodestar method and recognizing that "Lead Counsel pursued the Litigation on a contingency basis, having received no compensation during the Litigation, and any fee amount has been contingent on the result achieved."). Accordingly, this factor supports the requested award.

6. **Whether the Fee is Fixed or Contingent**

Class counsel undertook this litigation on a contingency basis. As district courts within this Circuit have recognized: "*Contingency cases are by nature risky*." *Landaeta v. Da Vinci's Florist, LLC*, 2011 U.S. Dist. LEXIS 122639 (D. Md. Oct. 24, 2011) (emphasis supplied); *see also Almendarez v. J.T.T. Enters. Corp.,* 2010 U.S. Dist. LEXIS 88043, *17-18 (D. Md. Aug. 25, 2010) ("Plaintiffs' attorneys handled this case on a contingency basis, and thus bore a substantial risk"). Thus, the "contingent fee" factor favors the requested fee award.

7. **The Results Obtained**

The Settlement, while "nonpecuniary" in nature, provides Plaintiffs and the Class with a real and substantial benefit. Plaintiff's Counsel's efforts resulted in an assurance that Plaintiffs'

and the Class' phones would either have Band 12 functionality restored to them or that they will be provided with a new smartphone that has Band 12 capability. These benefits restore to Plaintiffs and the Class the Band 12 functionality that Defendant removed from their smartphones, a cellular band which Plaintiffs contend is crucial to the functioning of their phones. *See* https://www.t-mobile.com/coverage/coverage-phones-700 ("Our Extended Range LTE signal reaches 2X as far and penetrates walls for 4X better coverage in buildings than before. But to take advantage of it you'll need a compatible device."). Under the "common benefit" doctrine, a court may grant fees to a plaintiff in class action cases where the action results in a benefit to others but does not necessarily involve a common fund. *See Rucker*, 1997 U.S. Dist. LEXIS 22036, at *9-10 (E.D.N.C. Dec. 7, 1997) (citing *Hall v. Cole*, 412 U.S. 1, 5 (1973) ("The 'common benefit' doctrine permits an award of fees to a successful plaintiff whose action results in a substantial benefit to others."). As such, this factor weighs in favor of the requested award.

### 8. The Experience, Reputation, and Ability of the Attorneys

Class Counsel submits that they have extensive experience in the field of consumer protection and other complex litigation and that they are highly regarded in this area of expertise as demonstrated by the attached Firm Resumes.

The quality of opposing counsel is also relevant in assessing the quality of Plaintiff's Counsel's work. Here, Defendants were represented by prestigious, experienced and highly capable law firms with a national reputation for vigorous advocacy in the defense of complex shareholder class and derivative cases. The quality of the Defendants' counsels' efforts here was evident throughout the pendency of the Action. Despite these challenging factors, Class Counsel have nonetheless obtained a result for the Plaintiffs and the Class that is fair and

reasonable. Furthermore, Defendants obtained experienced counsel, who were certainly motivated to negotiate an attorney fee provision that was fair and in the best interests of their clients. Under these circumstances, the fact that they have agreed not to object to or oppose the Fee and Expense Award, is a testament to its fairness, and thus, should be approved by this Court.

**B. Class Counsel's Rates are Reasonable.**

"After considering the *Barber* factors, the analysis turns next to the reasonableness of counsel's hourly rates." *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *9. Migliaccio & Rathod LLP and Whitfield Bryson & Mason LLP – the former based in Washington D.C. and the latter with an office in Washington D.C. – use rates based on the so-called LSI Laffey Matrix. *See* Exhibit E (showing LSI Laffey matrix rates). These rates have been accepted by the D.C. Circuit on a fulsome factual record about the cost of legal services in Washington D.C. In *Salazar v. Dist. of Columbia*, 809 F.3d 58 (D.C. Cir. 2015), the D.C. Circuit affirmed the adoption of the LSI Laffey matrix as the operative rates for plaintiffs in complex federal litigation in Washington D.C. *Id*. at 64-65. There, to show the reasonableness of the LSI Laffey rates, the plaintiffs submitted an affidavit from an economist, who opined that the LSI Laffey Matrix accurately measures the prices for legal services in Washington D.C., including how those prices have changed over time. *Id*. at 64. The plaintiffs there also submitted comparative billing tables that demonstrated the accuracy of the LSI Laffey Matrix in capturing average law firm rates. *Id*. at 65. The Circuit court noted that, based on the strong record before it, the rates in Washington, D.C. often far exceed the LSI Laffey rates. *Id*. The Circuit court concluded that "[w]ith these numbers and submissions in the record, the district court's point that 'the LSI-adjusted matrix is probably a conservative estimate of the actual cost of legal services in

this area,' does not appear illogical." *Id.* (quoting *Salazar v. Dist. of Columbia*, 991 F. Supp. 2d 39, 48 (D.D.C. 2014)).

It is appropriate for this Court to credit Class Counsel's Washington D.C. rates when conducting the lodestar analysis. When a plaintiff reasonably retains non-local counsel, then when evaluating lodestar, their non-local rates may be considered. *Rum Coal Creek Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). Where the type of work performed is typically handled by non-local counsel – as it was here – then it is appropriate for non-local counsel to be compensated at their usual rates. *See, e.g., North Carolina Alliance for Transportation Reform, Inc. v. U.S. DOT*, 168 F.Supp.2d 569, 580 (M.D.N.C. 2001) (awarding Laffey matrix rates to Washington D.C. firm); *ABC, Inc. v. Primetime 24*, 67 F.Supp.2d 558, 566 (M.D.N.C. 1999) ("[B]ecause work of this nature is typically handled by attorneys from larger cities, particularly Washington, D.C., and New York, it is appropriate for the court to consider the fees charges by attorneys from those communities in assessing the reasonableness of his fee."); *Phillips v. Triad Guar., Inc.*, No. 1:09CV71, 2016 U.S. Dist. LEXIS 60950, at *23 (M.D.N.C. May 9, 2016) (crediting out-of-state attorneys' fees in securities class action, even though the partners' rates ranged from $640 to $880 per hour and associates' rates ranged from $375 to $550 per hour). In particular, if non-local counsel offers unique, specialized expertise, courts have discretion to award more than the typical local rate. *See, e.g., General Motors LLC v. Bill Kelley, Inc.*, No. 12-51, 2013 WL 5504445 at *7-*8 (N.D. W.Va. Oct. 1, 2013); *Dollar Tree Stores, Inc. v. Centro NP LLC*, No. 07-608, 2008 WL 9371766 at *4 (E.D. Va. Dec. 5, 2008). For example, in *Rehberg v. Flowers Baking Co. of Jamestown, LLC,* No. 3:12-cv-00596-MOC-DSC (W.D.N.C. June 30, 2017), out-of-state counsel performed the bulk of the work, and the court approved, as part of the settlement, out-of-state attorney rates higher than those requested here.

Here, Plaintiffs' Counsel have extensive, national consumer electronics class action experience, including multistate cases. *See* Migliaccio Decl. at ¶ 10 and Firm Resumes. Even assuming, for the sake of argument, that the rates of Washington D.C. counsel were converted to lower out-of-state rates previously accepted for class action litigation, Class Counsel's lodestar would still support Counsel's requested award here. For example, in *In re MI Windows & Doors Prods. Liab. Litig.*, 2015 U.S. Dist. LEXIS 95889, at *15, the court awarded attorneys' fees of $600 for partners, $300 for associates, and $125 for paralegals in a multidistrict litigation settlement approval. There, to show reasonableness of attorneys' fees, plaintiffs submitted an affidavit from a local law professor who opined that the rates requested for reasonable for the district. The court agreed and found that, "such rates are consistent with those for class action attorneys operating on a contingency-basis in this district." *Id.* at 10. *See also Latham v. Branch Banking & Tr. Co.*, No. 1:12-cv-00007, 2014 U.S. Dist. LEXIS 16490 (M.D.N.C. Jan. 14, 2014) (approving partner rate of $550, associate rate of $350, and paralegal/law clerk rate of $175 for Minnesota-based law firm); *In re Wachovia Corp. ERISA Litig.*, No. 3:09cv262, 2011 U.S. Dist. LEXIS 123109, at *27 (W.D.N.C. Oct. 24, 2011) (calculating a lodestar cross check at a rate of $400 for partners in class action settlement approval). Using the rates approved in *In re MI Windows & Doors Prods. Liab. Litig.*, Class Counsel's lodestar would still be $165,048.75, and thus, under either analysis, Class Counsel's rates are reasonable and support the requested award.

## V. CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully requests that the Court enter the proposed Final Order and Judgment: (i) finally approving the proposed Settlement; (ii) certifying the proposed Settlement Class for settlement purposes; (iii) approving the incentive awards to the

Named Plaintiffs; and (iv) approving Class counsel's award of attorneys' fees, costs and expenses.

Dated: July 20, 2018                         Respectfully submitted,

*/s/ Nicholas A. Migliaccio*
Nicholas A. Migliaccio, Esq. (*pro hac vice*)
Jason S. Rathod, Esq. (*pro hac vice*)
Migliaccio & Rathod LLP
412 H Street N.E., Suite 302
Washington, D.C. 20002
Office: (202) 470-3520
Fax: (202) 800-2730

Gary E. Mason, Esq.*
Jennifer S. Goldstein, Esq.*
5101 Wisconsin Ave. NW
Ste. 305
Washington, D.C. 20016
Office: (202) 640-1160
Fax: (202) 429-2294

Scott C. Harris
Whitfield Bryson & Mason LLP
900 W. Morgan Street
Raleigh, North Carolina 27603
Telephone: (919) 600-500
Facsimile: (919) 600-5035

* *pro hac vice* to be filed

***Attorneys for Plaintiffs and the Class***